UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

**DECISION AND ORDER**
09-CR-331-A

ISMAEL LOPEZ,

Defendant.

Defendant Ismael Lopez was convicted, after a jury trial, of one count of

racketeering conspiracy in violation of 18 U.S.C. § 1962(d) ("RICO conspiracy"), two

counts of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)

("VICAR murder"), one count of narcotics conspiracy in violation of 21 U.S.C.

§ 846, and one count of possessing firearms in furtherance of a drug-trafficking crime

in violation of 18 U.S.C. § 924(c).  The convictions were for conspiracy to participate

in organized criminal activities of a violent street gang in Buffalo, New York, for an

accessorial role in the April 17, 2006 VICAR murders of Brandon MacDonald and

Darinell Young, for gang-related drug-trafficking, and for weapons possession in

furtherance of gang-related drug-trafficking.  Each of the VICAR murder convictions

carry a sentence of mandatory life imprisonment.  18 U.S.C. § 1959(a)(1).

Defendant Lopez moves pursuant to Fed. R. Crim. P. 29 for a judgment of

acquittal notwithstanding the jury's verdicts based primarily upon arguments that, due

to errors in the conduct of the trial, there was insufficient admissible evidence for a

rational jury to find him guilty as an accessory to the VICAR murders.  The Defendant

also challenges the sufficiency of the evidence in support of the other counts of

conviction in conclusory fashion.

Defendant Lopez moves in the alternative for a new trial pursuant to Fed. R. Crim. P. 33 based upon arguments that errors in the conduct of the trial irredeemably prejudiced him. The Defendant repeats his contention that he did not intentionally aid the principals who committed the VICAR murders while intending that the principals commit acts of murder. He repeats the conclusory claims that there was insufficient proof of his guilt of each of the other counts of conviction, and that he is innocent.

For the reasons stated below, the Court finds the jury's guilty verdicts were supported by legally-sufficient evidence, and were not a miscarriage of justice. Defendant Lopez's motions pursuant to Rule 29 for a judgment of acquittal and pursuant to Rule 33 for a new trial are therefore denied.

## BACKGROUND

During a trial that lasted approximately five and half weeks, evidence showed that Defendant Lopez was an associate and member of the 10th Street Gang, a violent street gang that operated on the Lower West Side of Buffalo. Members and associates of the Gang engaged in criminal activities that supported the Gang, including violence, threats of violence, and drug-trafficking. Members and associates were involved in Gang-related distribution of heroin, cocaine, crack cocaine, marijuana, and ecstasy.

Primarily to protect territory that the 10th Street Gang claimed exclusively as its own for drug dealing, and to assert and maintain its relative standing in a loose hierarchy of local street gangs, members and associates of the Gang were involved

in murders, attempted murders, and assaults.  Members and associates of the Gang routinely possessed firearms during their criminal activities, and evidence showed that firearms were freely shared among Gang members.

More than forty co-defendants and defendants alleged to be members or associates of the Gang have entered guilty pleas to related charges.  Defendant Lopez and three co-defendants, each of whom were also found guilty of all charges against them, were the only persons who sought a trial.

The territory of the 10th Street Gang was a neighborhood rife with poverty and violence.  The evidence at trial showed that, like most street gangs, the Gang was, in the minds of its members and associates, only partly about crime.  The Gang was for some associates and members more about social acceptance, support, excitement, and structures that were lacking elsewhere.  The Gang held neighborhood parties.  It offered a hierarchy of leadership and a clear path to gain approval and respect.  One could "put in work" by fighting, committing crimes, or by making sacrifices for Gang members or for the Gang, to earn trust and to build a sense of belonging and higher status.

The 10th Street Gang was a rival of other street gangs, and it had a long-standing violent rivalry with the 7th Street Gang, another neighborhood criminal gang which operated nearby on the Lower West Side of Buffalo.  At times, deadly violence erupted between the 10th Street Gang and the 7th Street Gang.  The murder victims in this case, Brandon MacDonald and Darinell Young, were murdered in the early-morning hours on April 17, 2006, because they were mistaken for

associates of the 7th Street Gang by members and associates of the 10th Street Gang who were retaliating for an earlier mistaken-identity shooting by a 7th Street Gang member.

It happened on April 16, 2006, as a group that included 10th Street Gang members was walking to a cookout in the vicinity of West Avenue and Maryland Street. At approximately 2:48 p.m., while among the group, Robert Sanabria, the younger brother of Defendant Lopez's co-defendant and fellow 10th Street Gang member Jonathan Delgado, was shot in the stomach and seriously injured during a drive-by shooting.

After Robert Sanabria was loaded into an ambulance, associates and members of the 10th Street Gang, including some who had been at the shooting, gathered at a park on 10th Street. They were afraid Sanabria might die. They were upset and angry about the shooting.

Robert Sanabria later identified 7th Street Gang member Luis Medina as the person who shot him to the Buffalo Police Department. Others who were present during the drive-by shooting had immediately recognized Medina.

The shooting of Sanabria by Medina was a case of mistaken identity: Medina meant to shoot a 10th Street Gang member who had recently been involved in an altercation with 7th Street Gang members outside a party. Sanabria had borrowed a New York Yankees jacket from that 10th Street member. Medina believed he was shooting the owner of the jacket in retaliation for the earlier incident when he shot Sanabria.

The shooting of Robert Sanabria was the first time in the long-running violence between the 7th Street Gang and the 10th Street Gang that 7th Street Gang members had traveled across Niagara Street into 10th Street Gang territory to shoot a 10th Street Gang associate or member. As a result, the shooting took on added significance as a challenge and an insult to the 10th Street Gang.

Some of members and associates of the 10th Street Gang gathered in the park on 10th Street Park in the immediate aftermath of the shooting began to plan retaliation against the 7th Street Gang. Some began seeking firearms to use to retaliate.

Later that evening, members and associates of the 10th Street Gang who planned to retaliate for the shooting of Robert Sanibria arranged to congregated at Sam Thurmond's apartment in a building at the corner of Niagara Street and Carolina Street. And plans to attack suspected associates of the 7th Street Gang who were seen in the vicinity of 155 Pennsylvania Street began to take shape.

To participate in the planned retaliation, Defendant Lopez first drove Derrick Yancey, one of his best friends, a short distance from Sam Thurmond's apartment to a spot on Niagara Street to act as a lookout in anticipation of the attack. After dropping Yancey, the Defendant then made a U-turn and returned to the apartment where the principal murders were waiting. Yancey called the Defendant on the telephone and said, essentially, "tell the boys it's quiet as hell out here, ya'll boys be safe."

Defendant Lopez, having returned to Sam Thurmond's apartment, then drove

the four of the five eventual shooters to the vicinity of the murders in his vehicle. Sam Thurmond had a shotgun; Douglas Harville had a .44 caliber handgun; Michael Corchado-Jamieson had a cut down .22 caliber rifle; and co-defendant Jonathan Delgado had a .380 caliber handgun. Three of these shooters, Thurmond, Harville, and Corchado Jamieson, testified during the trial. The fourth, Delgado, was convicted with the Defendant.

As Defendant Lopez drove the armed shooters down Pennsylvania Street past the eventual victims, he said, "Don't shoot from the car." Shortly thereafter, as Yancey walked away from his lookout post, he heard shots fired "like it was the Fourth of July."

The 10th Street Gang members and associates who rode to the area of 155 Pennsylvania Street had met in an nearby alley. They burst from the alley shooting at people on and near the porch of 155 Pennsylvania Street. They shot and killed Brandon MacDonald and Darinell Young. At least five guns were fired during the attack. Brandon MacDonald was killed by a .380 caliber round that was recovered from his chest. Darinell Young died after being shot multiple times. Durell Maddox, Miguel Albaran, Aaron Williams, and Payge Diaz were also shot, but they survived.

Sam Thurmond later told Yancey that Defendant Lopez "dropped them off," that night. The Defendant later admitted to Jairo Hernandez, "I dropped them off," that night.

**I.**

## Rule 29 Judgments of
## <u>Acquittal are Not Warranted</u>

In general, Rule 29(c) of the Federal Rules of Criminal Procedure authorizes a court to decide a case on its own and to acquit a defendant on legal grounds despite a jury verdict of guilty. But a motion for acquittal pursuant to Rule 29(c) may be granted only if, after viewing all of the evidence in the light most favorable to the United States, no rational juror could find the essential elements of the charged crime were proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Payton*, 159 F.3d 49, 56 (2d Cir. 1998). In viewing the evidence in the light most favorable to the United States, the United States must be credited with every reasonable inference that could have been drawn in its favor. *Jackson*, 443 U.S. at 319; *United States v. Facen*, 812 F.3d 280, 286 (2d Cir. 2016). A Rule 29(c) motion can only be granted if the evidence that the defendant committed the crime alleged is "nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999). Accordingly, a defendant challenging the sufficiency of the evidence "bears a heavy burden." *United States v. Si Lu Tian*, 339 F.3d 143, 150 (2d Cir. 2003).

Moreover, the ultimate questions raised by a challenge to the legal sufficiency of evidence are not whether a court believes that the evidence adduced at trial establishes a defendant's guilt beyond a reasonable doubt, but whether any rational trier of fact could reasonably reach that conclusion. *United States v. Valle*, 807 F.3d

7

508, 515 (2d Cir. 2015). The Second Circuit has emphasized repeatedly that "courts must be careful to avoid usurping the role of the jury." *Facen*, 812 F.3d at 286 (quoting *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003)). "Rule 29(c) does not provide the trial court with an opportunity to substitute its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *Id.*

Defendant Lopez repeatedly argues that evidence of his role as an accomplice to the two VICAR murders was insufficient as a matter of law to sustain the convictions because accomplice testimony against him did not satisfy a requirement of New York State law that such testimony be supported by corroborating evidence. The Defendant points out that New York Criminal Procedure Law § 60.22(1) provides that:

> A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense.

*Id.* The Defendant stresses that evidence that he acted with murderous intent when he drove some of the principal murderers to dropped them off near the scene of the murders shortly before the murders were committed was not sufficiently corroborated by non-accomplice testimony or independent evidence, and that judgments of acquittal must therefore be entered on the two VICAR murder counts against him.

Defendant Lopez's argument misapprehends the law. The New York corroboration requirement in CPL § 60.22(1) is "an evidentiary rule . . . not incorporated into a VICAR prosecution." *United States v. Diaz*, 176 F.3d 52, 87 (2d

8

Cir. 1999); *see*, *United States v. Paone*, 782 F.2d 386, 393 (2d Cir. 1987) (§ 1952

RICO case); *United States v. Cutolo*, 861 F.Supp. 1142, 1146–47 (E.D.N.Y. 1994)

(motion to dismiss § 1959 VICAR murder counts for failure to corroborate accomplice

testimony as would be required in a New York state court denied).  While an absence

of non-accomplice corroboration may go to the relative weight of evidence of the

Defendant's role in the murders, it is not required to support the verdicts that were

otherwise supported by legally-sufficient evidence.  *See e.g.*, *United States v. Riggi*,

541 F.3d 94, 110 (2d Cir. 2008).

Defendant Lopez also argues that there was otherwise insufficient evidence to

establish beyond a reasonable doubt that he was guilty of the racketeering murders in

violation of 18 U.S.C. § 1959(a) charged in Counts 3 and 4 of the Indictment for the

April 17, 2006 murders of Brandon MacDonald and Darinell Young.  The five

elements of those offenses are:

> . . . (1) that the organization was a RICO enterprise, (2) that
> the enterprise was engaged in racketeering activity as
> defined in RICO, (3) that the defendant in question had a
> position in the enterprise, (4) that that defendant committed
> or aided and abetted the murder, and (5) that his general
> purpose in so doing was to maintain or increase his position
> in the enterprise.

*United States v. Persico*, 645 F.3d 85, 105 (2d Cir. 2011) (citations omitted).

Racketeering murder in violation of 18 U.S.C. § 1959(a) can be predicated on

state-law murder in aid of racketeering.  *United States v. Diaz*, 176 F.3d 52, 79 (2d

Cir. 1999).

New York law provides, in relevant part, that "a person is guilty of murder in the

second degree when . . . [w]ith intent to cause the death of another person, he causes the death of such person . . . ." N.Y. Penal Law § 125.25(1).  New York law further provides that a person is criminally liable as an accessory or accomplice to an offense committed by another person when, "acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct."  N.Y. Penal Law § 20.00. When it comes to criminal culpability under New York law, whether a person was an actual perpetrator of the crime or guilty only as an accessory is irrelevant.  *See e.g.*, *People v. Rivera*, 85 N.Y. 2d 766 (1995).  There is no distinction between guilt as a principal or as an accessory, as long as the accessory has the same intent as the principal.  *Id.*

The Court finds the evidence in this case legally sufficient to prove Defendant Lopez's guilt of accessory to murder in violation of N.Y. Penal Law §§ 20.00 and 125.25(1) beyond a reasonable doubt.  In anticipation of the 10th Street Gang's retaliatory attack on the 7th Street Gang, the Defendant drove Derrick Yancey, one of his best friends, from Sam Thurmond's apartment at the corner of Carolina Street and Niagara Street, where the eventual attackers were preparing, to a spot on Niagara Street to act as a lookout in anticipation of the attack.  After dropping Yancey, the Defendant then made a U-turn and returned to the apartment where the principal murders were waiting.  Yancey called the Defendant on the telephone and said, essentially, "tell the boys it's quiet as hell out here, ya'll boys be safe."

After Defendant Lopez left the apartment at Carolina and Niagara, with four

armed shooters in his vehicle, he drove down Pennsylvania Street past the eventual victims and said "Don't shoot from the car." Shortly thereafter, as Yancey walked away from his lookout post, he heard shots fired "like it was the Fourth of July."

Sam Thurmond later told Yancey that Defendant Lopez "dropped them off," that night. The Defendant later admitted to Jairo Hernandez, "I dropped them off," that night.

The Court finds the evidence at trial of Defendant Lopez's knowing actions and words was legally sufficient to establish beyond a reasonable doubt that the Defendant intentionally aided the principal murderers, and that he acted with the same intent to trigger the natural and probable consequences of the shooting attack as the principals when he did so. When the Defendant told the principals who he was driving to the attack not to shoot from inside his vehicle as they all rode past the intended shooting victims on Pennsylvania Street, he confirmed the evidence tending to show that he shared the principals' intent. *See People v. Whatley*, 69 N.Y.2d 784, 785 (N.Y.1987). That evidence was legally-sufficient to establish beyond a reasonable doubt that the Defendant was an accessory to the murders.

Defendant Lopez also seeks to argue that the evidence at trial was legally insufficient to establish that he participated in the murders to maintain or to increase his position in the 10th Street Gang as required by the VICAR murder statute. The Court disagrees. Testimony during the trial established that 10th Street Gang members commonly understood that they needed to "put in work" to maintain or

increase their status in the Gang. Proof of the Defendant's conduct demonstrated that he understood that his relative status with and in the Gang was dependent on his efforts to sell narcotics, to commit acts of violence, and to aid and abet racketeering and other criminal acts of other members of the Gang.

The evidence was sufficient for a rational jury to conclude beyond a reasonable doubt that the drive-by mistaken-identity shooting of Sanibria was a compelling event for 10th Street Gang members, that retaliation against the 7th Street Gang was widely viewed as essential to the Gang among Gang members, and that Defendant Lopez concluded he would be an active participant in the retaliation. The Court finds that a rational jury could find beyond a reasonable doubt, based upon the evidence at trial, that the Defendant understood that it was expected that Gang members would help with the murderous retaliation against the 7th Street Gang, and that he participated in the retaliation with intent to murder in furtherance of his status in the Gang. *See United States v. Burden*, 600 F.3d 204, 220 (2d Cir. 2010).

Defendant Lopez would also contest the legal sufficiency of the evidence of his participation in the narcotics-trafficking conspiracy, and of his possession of firearms in furtherance of a drug-trafficking crime. Based upon the testimony of witnesses about the Defendant's participation in marijuana sales, and testimony of the Defendant's personal possession of firearms, the Court finds no basis to enter a judgment of acquittal on these charges, either.

## II.

## A New Trial
## is Unwarranted

Rule 33 of the Federal Rules of Criminal Procedure provides that a court may grant a defendant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a); *United States v. James*, 712 F.3d 79, 107 (2d Cir. 2013). A defendant's Rule 33 burden to show that a new trial is warranted is a heavy burden. *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009). A court may exercise its authority under Rule 33 only "sparingly and in the most extraordinary circumstances." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992) (quotations omitted). "To grant [a] motion [for a new trial], [t]here must be a real concern that an innocent person may have been convicted." *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013) (quotations omitted)).

On the one hand, Rule 33 "confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). A trial court is permitted to weigh the evidence and credibility of witnesses. *Id.* at 1413.

On the other hand, "motions for a new trial are disfavored in this Circuit; the standard for granting such a motion is strict . . . ." *United States v. Gambino*, 59 F.3d 353, 364 (2d Cir. 1995) (ellipsis added). While a court has "broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29," *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001), the "court must strike a

balance between weighing the evidence and credibility of witnesses and not wholly usurp[ing] the role of the jury." *United States v. Autuori*, 212 F.3d 105, 120 (2d Cir. 2000) (quotation omitted). "It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment" under Rule 33. *Sanchez*, 969 F.2d at 1414. A court's rejection of trial testimony does not automatically permit a new trial; the court "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation." *Ferguson*, 246 F.3d at 134. "The ultimate test is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005) (quotation omitted).

Defendant Lopez argues that the Court seriously prejudiced his case by erroneously ruling that documents about his employment history and educational record were inadmissible. The Defendant is generally correct when he points out that a defendant is authorized by Federal Rule of Evidence 404(a)(2)(A) to introduce evidence of a pertinent character trait to attempt to raise doubt whether he committed offenses. *Id.* That evidence usually consists of a witness' testimony of a personal opinion, or of reputation for the pertinent trait within a relevant community, consistent with the dictates of Federal Rule of Evidence 405 governing the methods of proving character traits, however. *See e.g., United States v. Riley*, 638 Fed.Appx. 56, 64 (2d Cir. 2016). The Defendant argues that exclusion of the employment and educational records that he offered into evidence erroneously prevented him from introducing evidence of his law-abiding character, even though he elicited no testimony in the

form of an opinion or reputation for being a law-abiding person.

Defendant Lopez overlooks that he was permitted by the Court to elicit some testimony from his two alibi witnesses, and from some of the witnesses called by the United States, about his employment and his education. That testimony was relevant background evidence that was clearly admissible within the Court's discretion. *United States v. Blackwell*, 853 F.2d 86, 88 (2d Cir. 1988)[1]. On the other hand, the documents about the Defendant's employment history and educational record, specifically tendered by the Defendant to show a character trait of law-abidingness, were specific-instance evidence that was inadmissible as evidence of his character. *See United States v. Doyle*, 130 F.3d 523, 542 (2d Cir. 1997). Moreover, because the documents were cumulative of the background testimony of the Defendant's witnesses, because the Defendant did not elicit opinion or reputation evidence of the character trait, and given the risks of juror confusion if the documents had been admitted, it was not an error, let alone a materially prejudicial error, to rule that the documents were inadmissible. Fed. R. Evid. 403.

Defendant Lopez also argues that he should be granted a new trial, in part, due to a spectator outburst in the presence of the jury during the closing argument of the United States. The Court was later informed the spectator was a close relative of one of the two victims of the VICAR murders. In what was an angry and emotionally-

---

[1] Defendant Lopez's belated suggestion that the United States opened the door to admission of the documentary evidence of his employment history and educational record when it elicited testimony from cooperating witnesses about their own backgrounds is unpersuasive. The Defendant's counsel was permitted to ask witnesses called by the United States questions about the Defendant's background, and counsel did so with some of the witnesses.

distraught voice, the spectator interrupted the prosecutor's closing, shouted that the defendants were murderers, and otherwise seemed to vilify the defendants in a garbled rant that trailed off as she was removed from the courtroom by a security officer at the Court's direction.  Aside from calling the defendants murderers, the Court could not tell what the spectator was shouting.

It would have been a miscarriage of justice if the Defendant Lopez had been subject to trial in an atmosphere disturbed by a victim-relative's inflamed passions. Due process, including specifically the presumption of innocence, would have been violated if the fact-finding process was prejudicially undermined by such an outburst. *See Estelle v. Williams*, 429 U.S. 501, 503-06 (1976).  But the Court concludes the spectator's outburst ultimately resulted in no significant prejudice to any of the defendants.  The victim-relative's shouting was quelled at the direction of the Court, and the Court delivered a curative instruction to the jury.  The Court's notes reflect that it instructed the jury essentially as follows:

> As I have admonished you repeatedly throughout the trial, your verdict in this case must be based solely on the evidence presented in this Courtroom in accordance with my instructions.  Before our recess, there was an outburst from the public gallery in the Courtroom.  As you now well know, you must completely disregard any aspect of that outburst and put it out of your minds because it is not evidence.  The parties have no opportunity to respond to that outburst.  I am instructing you to disregard it.  It would be a violation of your oath as jurors to allow yourselves to be influenced in any manner by that outburst.

The curative instruction also echoed repeated warnings during the trial that the jurors not begin deliberations until given final instructions on the law.  And the Court later

emphasized to the jurors in its final instructions that the verdict had to be based solely upon evidence admitted during the trial, and not be influenced by sympathy. The Court believes that the jurors followed the Court's instructions, and that the jury was not influenced by the victim-relative's outburst. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (*citing Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). Accordingly, after due consideration, the Court finds the victim-relative's outburst did not deny the Defendant a fair trial, *see United States v. Farmer*, 583 F.3d 131 (2d Cir. 2009), and did not materially prejudice the rights of the defendants.

Defendant Lopez argues that the jury must have been influenced by the victim-relative's outburst (and by other errors in the Court's conduct of the trial) because the jury returned the verdicts after only about three and a half hours of deliberations, and that was not enough time to consider the evidence introduced during the approximately five-and-a-half-week long trial. Based partly upon the Court's own observations while presiding over the trial, the Court disagrees. Although the trial was fairly long, the jury heard a lengthy series of closing arguments and rebuttal arguments, it had a copy of the Court's instructions on the law, and it had a lengthy verdict form to help it organize its deliberations.

Moreover, the proof of the murders of Darinell Young and Brandon MacDonald, of the attempted murders of others who were shot at the same time on April 17, 2006, of drug-trafficking, and of specific instances of other criminal activity, was generally strong. There was substantial overlap of the proof underlying different counts. Proof of the VICAR murders of Darinell Young and Brandon MacDonald was

also the subject of Special Factors findings underlying the RICO conspiracy count, for example.

The jury's task was not so difficult or complex that the Court will find misconduct from the relative speed of deliberations. *See e.g.*, *United States v. Barajas*, 2011 WL 5999024, at *2 (D.Kan. Nov. 30, 2011) (citing cases). Given the evidence against the defendants, the roughly three-and-a-half-hour duration of deliberations is as probative of the efficiency of the deliberations as it is of the Defendant's speculation that the jury was influenced by the isolated outburst during the prosecutor's closing and by errors in the conduct of the trial he contends were made.

The Court instructed the jury routinely throughout the trial of Defendant Lopez and his three co-defendants that it should not deliberate until the close of the evidence, and until it was given final instructions on the law. The jury was instructed to consider each defendant individually, and to consider each of the charged offenses separately. "[A]bsent evidence to the contrary, [the Court] presume[s] that jurors remain true to their oath and conscientiously observe the instructions and admonitions of the [C]ourt." *United States v. Rosario*, 111 F.3d 293, 300 (2d Cir. 1997) (quotation and citation omitted). "A jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (*citing Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). The Defendant offers no evidence supporting his speculation that the jury may have improperly reached its verdicts and unanimous findings. The Court observed no evidence of juror misconduct. Speculation about reasons for the

duration of the jury's deliberations, or about the content of the deliberations, does not warrant a new trial.

Defendant Lopez next renews an objection to denial of his request for a jury instruction on multiple conspiracies. However, because the Defendant has not even tried to show that the trial evidence was susceptible to inferences that there were separate networks operating independently of one another, and that he was substantially prejudiced by the Court's decision to deny the request for a multiple conspiracies charge. *See United States v. Maldonado–Rivera*, 922 F.2d 934, 962 (2d Cir. 1990).

The burden to show a basis in the evidence for a requested jury charge is on Defendant Lopez. *United States v. Bok*, 156 F.3d 157, 163 (2d Cir. 1998). The Defendant only suggests, in conclusory fashion, that the multiple-object RICO conspiracy and the multiple object drug-trafficking conspiracy with which he was charged were somehow by their nature justification for a multiple-conspiracies instruction. His suggestion is far from sufficient to carry his burden, and is without merit. *United States v. Maldonado–Rivera*, 922 F.2d at 962.

Similarly, Defendant Lopez also renews a request for a state-law instruction on the defense of extreme emotional disturbance on behalf of a co-defendant who was not charged with the VICAR murders[2]. The Defendant has not even attempted to

---

[2] The jury found co-defendant Delgado guilty of the deaths of Darinell Young and Brandon MacDonald in violation of New York Penal Law §§ 125.25(1) and 20 as a sentencing factor for the RICO conspiracy count. Dkt. No. 1774, p. 6. Delgado sought the extreme emotional disturbance instruction. Defendant Lopez does not explain how he was prejudiced by the Court's ruling that the instruction was not appropriate as to co-defendant Delgado.

establish that there was at least some foundation in the evidence that the Defendant himself was suffering extreme emotional disturbance manifesting itself in a profound loss of his self-control at the time of the murders.  *See People v. McKenzie*, 19 N.Y.3d 463, 466 (2012).  This argument on behalf of the Defendant is therefore also without merit.

Defendant Lopez's final arguments in support of a new trial are that he is entitled to a hearing and various relief based upon newly-discovered evidence consisting of statements of two persons that the Defendant contends are materially exculpatory under *Brady* and *Agurs*[3].  The letters and an affidavit are not sufficient to warrant a new trial, or even to grant any other relief, however.

In general, a Rule 33 motion for a new trial based upon newly-discovered evidence can be granted "only in the most extraordinary circumstances."  *United States v. Imran*, 964 F.2d 1313, 1318 (2d Cir. 1992).  The standard for considering such a motion is:

> (1) the evidence be newly discovered after trial; (2) facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence

*United States v. Owen*, 500 F.3d 83, 88 (2d Cir. 2007) (citations omitted).  Defendant Lopez has submitted letters from an accomplice trial witness, Derrick Yancey, and has submitted a letter and affidavit from Cebrinn Hill, who was also a participant in the murders of Brandon MacDonald and Darinell Young.  Suffice it to say, the

---

[3]  *Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. Agurs*, 427 U.S. 97 (1976).

proffered statements, which amount to no more than unsupported opinions on the ultimate issues of guilt, are not exculpatory, or even impeaching.

Moreover, having observed Derrick Yancey's testimony at trial, the Court finds no basis for a hearing concerning Yancey's potential testimony in Defendant Lopez's submissions, s*ee United States v. DiPaolo*, 835 F.2d 46, 51 (2d Cir. 1987), and no basis for any of the relief the Defendant seeks. Cebrinn Hill's proffered testimony, which need not be summarized here, is far too vague to be materially exculpatory, let alone likely to result in an acquittal on retrial of the any of charges against the Defendant. For all of the above reasons, the Defendant has not met his heavy burden to show that it is a "manifest injustice" to let the jury's guilty verdicts stand.

## CONCLUSION

For the foregoing reasons, the motions of Defendant Ismael Lopez for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(c), or for a new trial pursuant to Fed. R. Crim. P. 33, are denied. Dkt. Nos. 1590, 2092.

Sentence will be imposed January 30, 2017, at 12:00 p.m.

The schedule for the submission of sentencing papers is as follows: Statements with Respect to Sentencing Factors, objections and motions due by January 11, 2018; responses to objections and motions due by January 18, 2018; any character letters and any sentencing memorandum in support of the defendant due by January 18, 2018; any motions to adjourn sentencing due by January 22, 2018; final Presentence Investigation Report due by January 25, 2018; United States' response to legal arguments in defendant's sentencing memorandum due by January

25, 2018.

**SO ORDERED.**

_Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:   December 22, 2017