UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

========================================

UNITED STATES OF AMERICA,

                                        Plaintiff,

                                                                **DECISION AND ORDER**
                    v.                                              09-CR-331-A
                                                                    22-CV-419-A
ISMAEL LOPEZ,

                                        Defendant.

========================================

## INTRODUCTION

Before this Court is Petitioner Ismael Lopez's *pro se* motion seeking to vacate and set aside his sentence pursuant to 28 U.S.C. § 2255. Dkt. 2392.[1]  For the reasons which follow, Lopez's motion is denied.

## BACKGROUND

The reader is presumed to be familiar with the procedural history of this case. Briefly stated, Lopez was alleged to be a member of the notorious 10th Street Gang, a violent criminal enterprise that engaged in violence and facilitated the flow of narcotics in and around Buffalo, New York, for over a decade. Prior to charging Lopez, the government received authorization and direction from the Attorney General <u>not</u> to seek the death penalty against Lopez.  Dkt. 2397-1, p.2.  On February 2, 2012, Lopez was charged in a multi-defendant, multi-count indictment.

---

[1] References herein, unless otherwise indicated, are to filings contained on the docket in Case # 09-CR-331-A.

Dkt. 408.  None of the counts alleged any of the statutory death-penalty aggravating factors necessary to allow the Government to seek the death penalty. *Id*.

Following a jury trial, Lopez was convicted as charged of: one count of conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") with special sentencing factors charging the aiding and abetting of two murders ("murder enhancements"), in violation of 18 U.S.C § 1962(d); two counts of murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 2 ("VCAR-murder"); one count of conspiracy to possess with intent to distribute narcotics ("narcotics-conspiracy"), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846; and one count of possession of firearms in furtherance of a drug-trafficking crime ("firearms-possession"), in violation of 18 U.S.C. §§ 924(c)(1) and 2.  Dkt. 2196.

Lopez was sentenced to concurrent terms of life imprisonment for each of his RICO, VCAR murder, and narcotics conspiracy convictions and to a consecutive term of imprisonment of 5 years on his firearms-possession conviction. *Id*. Lopez's convictions and sentence were affirmed on direct appeal, *see*,  *United States v. Smith*, 823 F. App'x. 34 (2d Cir. 2020), and on June 7, 2021, his request for certiorari was denied. *See, Lopez v. United States*, 141 S.Ct. 2739 (2021).

On June 2, 2022, timely[2] filed the instant motion to vacate his conviction pursuant to 28 U.S.C. § 2255, "on the grounds of equity and ineffective assistance of counsel." Dkt. 2392.

---

[2] A § 2255 petition is timely if it is filed within one-year from the denial of a writ of certiorari.  *See*, *Rosa v. United States*, 785 F.3d 856, 857 (2d Cir. 2015).

## FACTS

After different attorneys briefly represented Lopez at his arraignment and detention hearings, attorney Maurice J. Verrillo, Esq. (hereinafter "Verrillo"), was, in August of 2012, assigned by the Court to represent Lopez. *See*, Dkt. Entry, dated 8/7/2012.  Verrillo represented Lopez throughout the remainder of the proceedings in both this Court and before the Second Circuit.  Notably, despite Verrillo's longstanding representation of Lopez, it was not until nearly a full decade after Verrillo began his representation that Lopez—in the instant § 2255 petition—first expressed any complaints or concerns about Verrillo's representation of him.

### Pretrial Proceedings

During the pre-trial phase of the case, Verrillo filed and joined in voluminous pre-trial motions challenging virtually every aspect of the government's case. In October 2012, Verrillo filed an extensive motion—64 pages including exhibits— seeking dismissal of the indictment, suppression of physical evidence and statements, disclosure of information including informant and witness identities and statements. Dkt. 614. In November of 2012, Verrillo filed a motion joining in a variety of other motions filed by four other co-defendants, Dkt. 669, along with an affidavit from Lopez in support of his previously filed omnibus motion. Dt. 681.  In January 2013, Verrillo filed another batch of motions seeking exclusion of identification evidence, a *Wade* hearing, preclusion of evidence, disclosure, dismissal of charges, severance, and other motions *in limine*. Dkt. 730.

On February 8, 2013, an evidentiary hearing was held on Verrillo's motions regarding Lopez's Fifth Amendment claim that his statement should be suppressed

and his Fourth Amendment claim seeking the suppression of certain evidence recovered during a search of a vehicle. Dkt. 793. During the hearing, Verrillo conducted extensive voir dire, cross-examination, and recross examination of the law enforcement witnesses called by the government. *See*, Dkt . 793, pp. 18-25, 27-28, and pp. 42-76. Following the hearing, Verrillo filed a post-hearing brief in support of the Lopez's motion to suppress. Dkt. 889.

After Magistrate Judge Hugh B. Scott ("Judge Scott") issued a Report and Recommendation ("R&R") which recommended denial of Lopez's motions, Verrillo filed objections with this Court. Dkt. 1029. Verrillo subsequently argued those objections before this Court. Dkt. 1218. This Court eventually denied Lopez's objections to the R&R and the case was set for trial.

Prior to jury selection, Verrillo filed extensive trial submissions and motions, which included the following: proposed jury questions, Dkt. 1403; proposed jury instructions, Dkt. 1405; a witness list, Dkt. 1406; proposed voir dire, Dkt. 1408; a motion to preclude evidence the government could introduce at trial including preclusion of witnesses, identification testimony, photographs of the deceased victims, and for the defendant to have his hands-free during trial, Dkt. 1432; an alibi notice, Dkt. 1434-35; an exhibit list, Dkt. 1433; and an attorney declaration in further support of Lopez's request to preclude evidence and to prohibit the government from presenting evidence with any variation from the allegations in the indictment. *See*, Dkt. 1448.

**Plea Discussions**

In this prosecution, the only pretrial plea dispositions secured by those 10th Street gang members who, like Lopez, were charged in the murders of Brandon MacDonald and Darinell Young, were with those who agreed to cooperate. Those who refused to cooperate, namely, Lopez, and his codefendants Jonathan Delgado, Matthew Smith, and Domenico Anastasio, proceeded to trial.  As made clear by an affidavit filed by AUSA Joseph Tripi, the lead prosecutor in this case, Lopez was never tendered a plea offer by the government.  Dkt. 2397-2.

**The Trial**

"During its roughly five-week course, the jury heard testimony from more than 50 witnesses, including ten members of the 10th Street Gang who had earlier pleaded guilty and cooperated with the government." *United States v. Delgado*, 972 F.3d 63, 67–68 (2d Cir. 2020). On his direct appeal, Lopez challenged the sufficiency of the evidence against him, but that effort was rejected by the Second Circuit.  *United States v. Smith*, 823 F. App'x. at 38-39.  In that regard, the Court observed that evidence at trial established "that Lopez knew that the plan was to kill rival gang members, and Lopez intentionally aided his codefendants by transporting them to the location when they were fully armed and ready, willing, and able to shoot and kill [MacDonald and Young]." *Id*., p. 38. Such evidence further established that "Lopez acted with the general awareness to increase his status in the gang." *Id*. Furthermore, "[t]rial testimony established Lopez's guilt as a drug supplier who sold marijuana from his house. For example, there was testimony that one drug supplier sold Lopez more than 100 pounds of marijuana and that another gang member

bought more than 60 pounds of marijuana from Lopez." *Id*., p. 39. Finally, regarding the gun count, "[t]rial testimony established that Lopez brought a firearm to the 10th Street Park to provide protection for the gang while selling drugs there." *Id*.

Despite the significant evidence against Lopez, Verrillo vigorously cross-examined government witnesses. Moreover, at trial Verrillo presented a defense case in support of the defendant's alibi defense. Specifically, Verrillo called Lopez's mother, Francisca Rodriguez, and his sister, Luz Hernandez, to establish that Lopez was home the night of the murders and that he did not sell drugs or possess a gun. Their testimony also sought to establish that Lopez was not permitted to drive the red Ford Explorer registered to his father after 10 p.m.—in furtherance of the defense effort to cause the jury to infer that Lopez would not have been able to use the vehicle to drive his cohorts to commit the murders. Furthermore, Verrillo and the other three (3) defense lawyers vigorously challenged the government's proof during summation, focusing heavily on the veracity of the government's cooperating witnesses.

### **Defendant's Post-trial Motions**

After the jury returned a verdict convicting all defendants of all counts, Verrillo filed post-trial Rule 29 and 33 motions on Lopez's behalf. Dkt. 1590. Verrillo also filed a reply to the government's response in opposition to Lopez's post-trial motions, Dkt. 1664, and argued vigorously before this Court in support of Lopez's Rule 29 and 33 motions. Dkt. 1747. Subsequently, Verrillo filed a second Rule 33 motion on Lopez's behalf, seeking further disclosure and claiming that newly

discovered evidence warranted a new trial. Dkt. 2092.  This Court denied all of Lopez's post-trial motions. Dkt. 2165.

### Sentencing

Prior to sentencing, Verrillo filed a sentencing statement on the Lopez's behalf objecting to substantial portions of the Pre-Trial Sentence Report (PSR).  Dkt. 2166. Verrillo also filed an extensive sentencing statement and exhibits along with a motion for a downward departure arguing that that the mandatory life sentences applicable to Lopez were excessive under the Eighth Amendment and violated Due Process and Equal Protection under the Fifth and Sixth Amendments of the Untied States Constitution. Dkt. 2167.  Verrillo's objections and motion were denied when this Court imposed its sentence on January 30, 2018.  Dkt. 2184 & 2196.  Verrillo filed a timely Notice of Appeal. Dkt. 2190.

### Appeal and Second Circuit Summary Order

On November 8, 2018, Verrillo filed a brief with the Second Circuit Court of Appeals in support of Lopez's appeal seeking to vacate his convictions and sentence. *See* , Second Circuit Docket #18-369, Dkt. 106. On appeal, Verrillo argued: that the evidence was legally insufficient as to all counts of conviction; that the sentence of life imprisonment was harsh and excessive punishment under the Eighth Amendment; and that the District Court erred in denying motions for a post-trial hearing related to purported exculpatory evidence. *Id*.

The Second Circuit rejected Lopez's arguments on appeal by Summary Order on August 18, 2020. Dkt. 2339; *see United States v. Smith*, 823 F. App'x. 34, *supra*.

After the Supreme Court denied Lopez's request for a writ of certiorari, Lopez filed

this *pro se* petition.

### DISCUSSION

At the outset, this Court observes that Lopez is proceeding *pro se*.  Therefore,

his submissions must be "liberally construed in his favor," *Simmons v. Abruzzo*, 49

F.3d 83, 87 (2d Cir. 1995), and "read to raise the strongest arguments that they

suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (quotation mark

omitted).  Nevertheless, Lopez still bears the burden of proving his claims by a

preponderance of the evidence. *Triana v. United States*, 205 F.3d 36, 40 (2d Cir.

2000).  "[C]onclusory assertions and hearsay statements will not suffice" to meet this

burden." *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987).  Nor is a court

required to credit factual assertions that are "contradicted by the record in the

underlying proceeding." *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009).

### I.    Lopez's §2255 Claim

Collateral relief, such as that sought by Lopez, is available only for a

constitutional error "that constitutes 'a fundamental defect which inherently results in

a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir.

1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).  As the Second

Circuit has explained, "[t]he reasons for narrowly limiting the relief permitted under §

2255 – a respect for the finality of criminal sentences, the efficient allocation of

judicial resources, and an aversion to retrying issues years after the underlying

events took place – are 'well known and basic to our adversary system of justice.'"

*Bokun*, 73 F.3d at 12 (quoting *United States v. Addonizio*, 442 U.S. 178, 184 (1979)).

A § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal. *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir.1992) (quoting *Barton v. United States*, 791 F.2d 265, 267 (2d Cir.1986) (per curiam)); *see also Schlup v. Delo*, 513 U.S. 298, 318-319 (1995) ("[A] habeas court may not ordinarily reach the merits of successive claims ...absent a showing of cause and prejudice.") (citations and footnote omitted). "The mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (citation omitted). "To determine whether an issue may be reconsidered on remand, a district court "should look to both the specific dictates of the remand order as well as the broader spirit of the mandate." *Id*.

In his petition, Lopez raises a variety of claims to support his contention that Verrillo's representation of him amounted to a violation of his Sixth Amendment right to the effective assistance of counsel.

## A. Ineffective Assistance of Counsel

A petitioner claiming ineffective assistance of counsel "must show that (1) counsel's performance was objectively deficient, and (2) petitioner was actually prejudiced as a result." *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. at 687–88, 692–93 (1984)). The burden of showing ineffective assistance is "a heavy one because, at the first step of analysis,

[a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. (cleaned up).

"The determinative question at this step is not whether counsel 'deviated from best practices or most common custom,' but whether his 'representation amounted to incompetence under prevailing professional norms.'" *Id*. at 129–30 (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)). The standard for evaluating the adequacy of counsel's representation is "a most deferential one," *Harrington*, 562 U.S. at 105, because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *United States v. Thomas*, 608 F.App'x. 36, 38 (2d Cir. 2015) (quoting *Strickland*, 466 U.S. at 690).

To give appropriate deference to counsel's independent decision-making, Courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Parisi*, 529 F.3d at 141 (quoting *Strickland*, 466 U.S. at 689). Courts are cautioned against "look[ing] back and project[ing] ex post knowledge of consequences on the attorney's ex ante selection of one path among the many available to him[,]" *id*., and must instead "consider the circumstances counsel faced at the time of the relevant conduct and ... evaluate the conduct from counsel's point of view." *Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005).

Should defendant clear this first hurdle by demonstrating ineffective performance by counsel, prevailing on a § 2255 petition then requires demonstrating actual prejudice from identified errors. *Harrington*, 689 F.3d at 129 (citing *Strickland*,

466 U.S. at 668, 687–88, 692–93). That is, Lopez must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, not merely that an error "had some conceivable effect on the outcome." *Strickland*, 466 U.S. at 693. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Here, regarding the first *Strickland* prong, none of the claimed errors cited by Lopez are sufficient—either individually or collectively—to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Bell v. Miller*, 500 F.3d 149, 156 (2d Cir. 2007) (quoting *Strickland*, 466 U.S. at 689). Moreover, even if he was able to point to an error by Verrillo, he cannot demonstrate prejudice. Accordingly, his claims do not warrant relief.[3]

## 1. Failure to Communicate a Plea Offer

While Lopez first claims that he "was not sufficiently advised of a plea offer extended by the government prior to trial preparation in this matter by counsel," *see*, Dkt. 2392, p. 6, the record before this Court establishes that, in fact, no plea offer was ever extended to Lopez by the government because, in part at least, Lopez refused to cooperate with the government. Dkt. 2397-2 ("[a]ny plea offer would have required Ismael Lopez to admit his role in the murders of Brandon MacDonald and Darinell

---

[3] To the extent that Lopez's papers suggest that he received ineffective assistance of counsel because he was not appointed "learned counsel," *see*, Dkt. 2392, pp. 6-7, such claim lacks merit, since the Second Circuit has stated that a defendant is not entitled to be represented by two attorneys in situations, as here, in which the government files notice of its intent <u>not</u> to seek the death penalty. *United States v. Douglas*, 525 F.3d 225, 236 (2d Cir. 2008).

Young, and to cooperate with the government."). To establish a Sixth Amendment violation, the defendant must establish that his attorney in fact failed to communicate a plea offer or failed to provide adequate advice about a plea offer and his sentencing exposure. *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir.1998); *Boria v. Keane*, 99 F.3d 492, 496-98 (2d Cir.1996). Verrillo can hardly be faulted for failing to communicate a non-existent plea offer.

Additionally, on January 17, 2013, Verrillo filed a motion seeking expanded discovery in light of the Supreme Court's decisions in *Missouri v. Frye*, 566 U.S. 134 (2012) and *Lafler v. Cooper*, 566 U.S. 156 (2012). *See* Dkt. 730, p. 4 ("In *Frye*, the issue was failure to communicate an offer. In *Lafler*, ineffective assistance was determined based upon bad advice given the defendant by his attorney."). Thus, the record demonstrates that Verrillo was well-aware his obligations relative to any plea offer—had such an offer ever been made.

Finally, nowhere in his motion does Lopez even allege that he was willing to cooperate. It is not ineffective assistance where a petitioner cannot demonstrate how the outcome of the proceeding would have been different. *Hurel Guerrero v. United States*, 186 F.3d 275, 282 (2d Cir.1999).

### 2. Failure to Object

Lopez next asserts, while largely failing to provide specific examples, that Verrillo's representation was deficient because he failed to make proper objections during trial. Dkt. 2392, p. 6. Notwithstanding such conclusory contention, this Court notes that Verrillo lodged numerous objections during trial and joined in objections of his co-defendants. He challenged virtually every aspect of the government's case and

included his efforts: to preclude testimony of potential government witnesses, and to preclude the government from introducing photos of the deceased victims during trial. Dkt. 1432.  Prior to trial, Verrillo sought to suppress damaging evidence against Lopez derived from a search and Lopez's own statements. Dkt. 538.  Verrillo also filed additional motions seeking: to exclude identification evidence; for a *Wade* hearing; for preclusion of evidence; for disclosure; to dismiss charges; for severance; along with other motions in limine. Dkt. 730. An evidentiary hearing was held on Verrillo's motion, Dkt. 791, and during that hearing, Verrillo cross-examined government witnesses. Following the hearing, Verrillo filed a post-hearing brief in support of the Lopez's motion to suppress.  Dkt 889.

Having sought and failed prior to trial to suppress and/or preclude the admission of the highly inculpatory evidence against Taylor—including Taylor's own statements, identification testimony, and autopsy photographs—all of which were the subject of unsuccessful pretrial efforts to suppress or preclude—Verrillo's failure to register a futile objection to the admission of such evidence in front of the jury can hardly be characterized as ineffectiveness. Moreover, by providing notice of and proceeding with an alibi defense regarding the murders, which represented the most serious charges that carried the greatest statutory mandatory minimum terms of imprisonment, Verrillo chose a strategy which, though ultimately unsuccessful, was cogent and well thought out.  "Actions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance." *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) (quoting *Strickland*, 466 U.S. at 689).

### 3.  Lopez Was Not Shackled in View of the Jury

Lopez next claims that he was shackled throughout the trial, that Verrillo was ineffective in seeking to prevent it, and that he was prejudiced because the jurors would have inferred that he was dangerous and presumed guilty. Dkt. 2392, p. 10.

Contrary to Lopez's assertion, however, per the practice of this Court, Lopez's hands were not shackled during trial, he was not dressed in jail clothes during trial, and he and his co-defendants on trial, were moved in and out of the courtroom outside of the presence of the jury.  Further, as per its routine practice, the Court utilized bunting around the defense tables which shielded the legs of all the defendants on trial, including Lopez, from view of the jury. Lopez fails to allege that any jurors observed any shackles.  Moreover, prior to trial, Verrillo filed a motion specifically requesting that Lopez's hands be free—which they were—during the trial. Dkt. 1432. For these reasons, Lopez's claim of a constitutional violation and ineffective assistance of counsel lack merit.

### 4.  Sentencing

Lopez's claim that Verrillo was ineffective at sentencing also fails. As noted, in addition to arguing the factors set forth at 18 U.S.C. § 3553(a), Verrillo also argued to both the District Court, at sentencing, *see* Dkt. 2166 and 2167, and to the Second Circuit, on appeal, *see*, *United States v. Smith*, 823 F. App'x. at 39, that the mandatory life sentences constituted harsh and excessive punishment under the Eighth Amendment. In rejecting the argument raised by both Verrillo, on behalf of Lopez, and another attorney on behalf of codefendant Smith, the Second Circuit stated:

Defendants' age-based challenges to their mandatory life sentences are foreclosed by our recent decision in *United States v. Sierra*, 933 F.3d 95, 97 (2d Cir. 2019) ("Since the Supreme Court has chosen to draw the constitutional line at the age of 18 for mandatory minimum life sentences, the defendants' age-based Eighth Amendment challenges to their sentences must fail." (citation omitted)). We are "bound by the decisions of prior panels until such time as they are overruled either by an *en banc* panel of our Court or by the Supreme Court." *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004). Smith and Lopez were both over eighteen years old at the time of the VCAR-count murders, which carry a mandatory-minimum sentence of life imprisonment. Accordingly, we affirm their sentences.

*United States v. Smith*, 823 F. App'x. 34 at 39.

Since Lopez is serving the mandatory minimum sentence, any ineffective assistance claim predicated on his sentence necessarily fails. *Wilson v. United States*, No. 04-CR-1016 (NGG), 2023 WL 6385799, at *8 (E.D.N.Y. Sept. 29, 2023)("[petitioner] cannot show prejudice from any ineffective assistance of counsel in the penalty phase, as he is currently serving the mandatory minimum sentence"), *appeal dismissed*, No. 23-7918, 2024 WL 2805549 (2d Cir. Apr. 11, 2024), *reconsideration en banc denied*, No. 23-7918, 2024 WL 2805548 (2d Cir. May 31, 2024); *see also United States v. Sharpley*, 399 F.3d 123, 124 (2d Cir. 2005) (finding no prejudice in sentencing when the sentence received was the mandatory minimum).

For these reasons, the Court concludes that Lopez's various claims predicated upon his assertion that he received ineffective assistance of counsel all lack merit.

I.    **Lopez's Motion for Compassionate Release**

In addition to his claim of ineffective assistance of counsel, Lopez also claims entitlement to a "limited sentencing reduction" based upon the compassionate release statue, 18 U.S.C. § 3582(c)(2) and Guideline Amendment 782. Dkt. 2392, pp. 13-18. For the reasons which follow, this Court rejects Lopez's request for compassionate release and/or resentencing.

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)). The First Step Act, which modified 18 U.S.C. § 3582(c), allows the Court to modify a sentence upon a motion of either: (i) the Director of the Bureau of Prisons [BOP], or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Once exhaustion is established, courts have discretion under the First Step Act to grant compassionate release when (1) there are "extraordinary and compelling reasons" that warrant a sentence reduction, (2) the sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the sentence reduction "is supported by the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Canales*, No. 16-CR-0212, 2020 WL 2319294, at *2 (S.D.N.Y. May 9, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). "If any one requirement is not satisfied, the district court may deny the motion without

considering the remaining requirements. *United States v. Hunter*, No. 21-1773, 2022 WL 2288688, at *1 (2d Cir. June 24, 2022) (citing *United States v. Keitt*, 21 F.4th 67, 72-73 (2d Cir. 2021) (*per curiam*)).  The defendant bears the burden of proving that he is entitled to compassionate release. *See United States v. Earlsey*, 568 F. Supp. 3d 298, 301 (W.D.N.Y. 2021).

Lopez's motion makes no reference to any effort by him to seek, much less exhaust, the available remedy of applying for release to the warden of the facility where he is incarcerated, nor indication what any such application was denied or ignored. 18 U.S.C. § 3582(c)(1)(A). Because Lopez has not exhausted his remedy, his motion will be denied.

Even had Lopez exhausted his remedy, the Court, on the record before it, sees no basis for granting the motion.  "Section 3582(c)(2) provides that a sentencing court may reduce a defendant's term of imprisonment if the sentence was based on a Guidelines range that was subsequently lowered by the Sentencing Commission." *United States v. Kupa*, 768 F. App'x. 53, 54 (2d Cir. 2019) (summary order) (citing 18 U.S.C. § 3582(c)(2)); *see also United States v. Gil-Reyes*, 671 F. App'x. 20, 21 (2d Cir. 2016) (summary order) (*citing United States v. Borden*, 564 F.3d 100, 103–04 (2d Cir. 2009)) ("Under § 3582(c)(2), a district court may reduce a defendant's sentence only if it was based on a sentencing range that the Sentencing Commission subsequently lowered and the reduction would be consistent with applicable Guidelines policy statements.").

Here, Lopez cites Amendment 782 as providing the basis for a reduction in his Guidelines range. Dkt. 2392, p. 13. However, Amendment 782 of the Sentencing

Guidelines lowered the penalties for most drug offenses by reducing many of the offense levels in the Drug Quantity Table in 2D1.1 by two levels. *See United States v. Valencia-Lopez*, No. 05-CR-841 (NGG), 2018 WL 7290831, at *2 (E.D.N.Y. June 19, 2018), *aff'd*, 792 F. App'x. 846 (2d Cir. 2019).  Amendment 788 of the Guidelines states that Amendment 782 may be applied retroactively to lower the sentence of a "defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered." *See id*.; 18 U.S.C. § 3582(c)(2).

Because Lopez's guidelines were determined based upon the murders and gun possession charges for which he was convicted, the mandatory life sentence plus 5-years imposed by the Court,  represented the statutory mandatory minimum term he faced on the offenses for which he was convicted.  Moreover, his Guidelines for the RICO, VCAR, and gun offense—the offenses which ultimately determined the sentences imposed by this Court—have not changed since the time of his sentencing in 2018.  Accordingly, Lopez is not entitled to resentencing on the grounds he presently seeks. *See Dillon v. United States*, 560 U.S. 817, 826 (2010); *United States v. Jarvis*, 883 F.3d 18, 21-22 (2d Cir. 2018) ("a sentence reduction is not authorized if an amendment to the Guidelines range is applicable to the defendant, but the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision." [alterations and quotations omitted]).

## CONCLUSION

For the foregoing reasons, Lopez's § 2255 motion (Dkt. 147) is **DENIED**. No certificate of appealability shall issue because Lopez has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right.").

**IT IS SO ORDERED.**

_____s/Richard J. Arcara_____
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  April 22, 2025